This is case number 4-13-1009, People's State of Illinois v. Donna Taylor. Let's see, for the appellant we have Attorney Filippi, and for the appellee we have Julia Wyckoff. Ms. Filippi, are you ready? Filpi? Filpi. Are you ready to proceed? Alright, you may do so. This is a case about fuzzy cell phone photos and 20-year-old Donnell Taylor's monosyllabic responses to detectives' leading questions, and whether this evidence is sufficient to prove beyond a reasonable doubt that Taylor possessed a firearm under the statute. In 2000, the Illinois legislature adopted the precise and specific definition of a firearm as any device designed to expel a projectile by the action of an explosion, expansion of gas, or escape of gas. The statute includes four enumerated exceptions for BB guns, pellet guns, airsoft guns, among some other guns. This is a case, however, where none of the state's witnesses have ever seen a reported firearm in person. Instead, the state's case is based upon photos retrieved from Taylor's cell phone and Detective Finnelli's opinion about the items seen in these photos. But this is an age of look-alike guns and replica guns, and it can be difficult, if not impossible, to tell the difference between a firearm and a gun that would fall under one of the statutory exceptions. So at a minimum, what testimony was necessary, either from the officer or the defendant in the officer's interview with him, to establish that this was a firearm? Minimally, what would have been necessary, in your opinion? Well, in this situation where there is no firearm recovered or ever seen by someone, there needs to be something else, such as an admission by my client. So let's just start with that. I'm sorry to interrupt, but with an admission. If the officer's testimony was, in the interview, I asked if that was a gun he was holding, and he said yes, would that be sufficient? If Finnelli had asked Taylor, are you holding a firearm, in this photo, are you holding a firearm, and he had said yes, that would be sufficient. So if instead of firearm, he used the word gun, that would be insufficient? I think under the statute, Your Honor, it's hard to know. I mean, we'd have to figure out, is there other evidence to explain what Taylor means by gun? Ideally, Detective Finnelli would have said, are you holding a firearm? What type of gun is it? More than just, are you holding a gun? And in fact, Taylor Finnelli never asked him, are you holding a gun? He never asked that. He never asked that because when he was interrogated, the purpose of the interrogation was to look at the shooting. They were concerned about the shooting, and because of that, they never asked that critical question that would have determined whether what occurred here was, in fact, a criminal offense. Well, going back to what would have been minimally sufficient to sustain the conviction, you're indicating that perhaps there would have to be testimony and admission on the part of the defendant that it was a firearm. That it's a firearm under the statute, which again, is very specific. It includes these exceptions, and it'd have to be clear that it was actually a firearm, not a BB gun. Would it be enough to say, is that a real gun you're holding there in the picture? Possibly, Your Honor, but again, that's not what happened in this case. I realize that. But that combined with Detective Finnelli's opinion, yes. But ideally, of course, it'd be if they recovered the gun. I mean, this is, again, a subset of cases, UUW cases, where there actually is no gun recovered. And this case is very unique because no witnesses, again, like I said, have ever seen this firearm in person. Well, Finnelli, during the interview, asked the defendant if that's the gun that was used in the shooting. Words to that effect. And defendant says no. So the question is phrased using the word gun. Defendant responds in the negative, saying no. But he doesn't say no, that's a BB gun you're looking at. Or no, that's not a real gun. He says no. So what are we, and more importantly, I suppose if it's a factual question, what's the jury to infer from that colloquy? Is that an admission on the part of the defendant, an implied admission, that that's a firearm? No, Your Honor, because requiring the defendant to do more than just simply answer Finnelli's question to say no, and then to say, and it's a BB gun, is shifting the burden to the defendant. No, I don't think that that's shifting the burden. If Finnelli's question is, let's say, and I'll play around with it just a little bit. So this isn't the way it panned out here. But if Finnelli said, was that the firearm, is that firearm in the photo the one used in the shooting the other night, and defendant said no, that would be an admission. Because what's been phrased in the question is the firearm used in the shooting. So I don't think that is placing a responsibility on the part of the defendant to produce evidence. It's just taking his response and viewing it for what it is, an implied admission. But what you're saying is it's insufficient to serve as an admission on the part of defendant. Yes, Your Honor. I would say that in your example, that would be an inference. I mean, that what we have here is an inference, but that's not enough to prove beyond a reasonable doubt. And under the Illinois Supreme Court case Lobsher, it's the state's burden to prove that the exemptions don't apply in this case. The state may not leave to conjecture or assumption essential elements of the crime. And that's exactly what happens here when Finnelli looks at the photographs and says, I think that this is a firearm. But again, keep in mind, Finnelli also testified that it was possible that it was a BB gun. A BB gun could have an extended magazine like the one in the photos. And he also admitted he's not an expert on those types of guns, on BB guns. As the Seventh Circuit observed in Bay, there are guns in the market that are made to look and function like a real gun in every way, except those ways that qualify them as a firearm in Illinois. We're firearms now precisely defined by statute. It's the state's burden to prove that the object actually qualifies as a firearm under the statute. In this case, the state did not meet this burden, and Taylor received 10 years based on photos. In a case where none of the state's witnesses have ever seen this item in person. Are there any cases in Illinois that would involve sentencing enhancements for a firearm, where the defendant is convicted of the crime and given an enhanced sentence for possession of a firearm during the commission of the offense, and the firearm wasn't recovered, where you had testimony comparable to this. Maybe an eyewitness said he had a gun. But you don't have any proof, more definitive proof, along the lines of what you're suggesting here, to support the evidence that it was a firearm. I'm not aware of any of those particular cases, Your Honor. However, there are cases, like Washington and Malone, where the gun was never recovered. What about the case, and I can't remember the name, but I believe it was a Walgreens that was robbed, and it's just on the video, but there was the fact that they heard the clunking sound of the weapon, but that gun was never recovered. I mean, I think that would be about the closest that's been cited to us. Exactly, Your Honor. That was one of the cases I was going to mention to you, is that gun was never found. But there is evidence about the nature of that object. As Justice said, the victim heard the gun clunk on the counter, so she knew it was heavy and metal. That's the definitive difference between that case and this case? There's another very important detail about Malone, too. Malone specifically noted that the victim's testimony that it was a firearm was unequivocal, and we don't have that here. So we don't have anyone ever seeing this purported firearm like in Malone. She actually sees it. She's near it. It's right across the counter from her. She hears it. More evidence that it's probably a firearm. Well, we have a picture of it. We have a picture of it, but as the Seventh Circuit noted, it could be a firearm that's now a cigarette lighter, so it doesn't qualify as a firearm under the statute. It could be a replica gun, a look-alike gun. Those are sold. They're easy to obtain, and you can't tell the difference, particularly not in Malone. Well, in Malone, wouldn't the individual, the witness who testified, be operating under the same constraints as we are operating looking at this picture? I mean, in Malone, was that witness versed in firearms, an expert of some sort, to be able to distinguish between the two? We don't know that, but we do know that that victim was unequivocal in saying that this is a firearm. And here Detective Finelli says, it could have been a BB gun. I don't know. I'm not an expert in BB guns. He doesn't know, and he's just looking at fuzzy cell phone photos. No one's ever seen it. He can't hear it on a counter to know that it has heft, that it's metal. He's equivocal. His testimony is equivocal, and that's all we have. In addition, I mean, the state would argue that we have more than just the photos. As your Honor was mentioning earlier, there's Taylor's statements in this shooting interrogation video. First of all, this 12-minute long interrogation video should not have been admitted as evidence because it was highly prejudicial other crimes evidence that did not demonstrate Taylor's knowledge of the object. The state relies on what Taylor did not say during Finelli's questioning when he said, is this the gun used in the shooting? The state relies on the fact that Taylor didn't say no, it's a BB gun, as evidence that it was, in fact, a firearm. But this monosyllabic response does not show that he actually knows the difference between a BB gun and a firearm, or that that item is a firearm. What it shows is that the item in the photos is not a firearm, that it was not specifically the firearm used in the shooting. Playing this 12-minute clip from the shooting interrogation tells the jury that Taylor is involved somehow in this shooting. By doing so, it presents other crimes evidence to the jury. It tells the jury that there was a shooting, that there was a victim, that someone was shot by firearms, by working firearms that fall under the statute. More importantly, it connects, in the shooting interrogation, connects Taylor to these working firearms. And here it's more than just implication because the prosecutor emphasized the fact that it was a shooting interrogation to the jury during closing argument, saying, remember the context of the interrogation, it's about a shooting, people who used guns to shoot up 1101 Gettysburg. Because of the weaknesses of the fuzzy photos by themselves, the state wanted this interrogation video to make this very connection to the jury. This video, again, connects Taylor to actual firearms, making it more likely than not that what he was possessing in the photos was a firearm, but doesn't provide any evidence about what the object is in the photos. At best, Taylor's monosyllabic responses establish, one, that at some unknown, unspecified point in his life he has touched a firearm, and two, that that item was not used in the shooting. At no point does Taylor refer to the item as a gun, and at no point does Detective Finelli ever ask him what type of gun is he holding in the photo, what model is it, is it a firearm, can it shoot bullets? He never asks that, and again, the reason he never asks that is because at that point they're worried about the shooting, not about what's in the photos. So they never ask that critical question that would have established whether this was a crime. Finally, counsel failed to ensure that the jury was properly instructed. Even though the theory of defense was that the state didn't prove this was a real firearm, that it was a BB gun instead, defense counsel never made sure that the jury was told that BB guns aren't firearms in Illinois. This was highly prejudicial because, again, it's a theory of defense. Without that, all they're told is that firearms are any devices that expel a projectile. Presumably a BB gun would fall under that. So the jury has no option under the instructions that they're given but to find that it's a firearm, even if they believed it was a BB gun. Counsel also failed to request IPI 3.14, the limiting instruction for other crimes evidence, which would have protected Taylor from any unfair inference from the other crimes. Because the state failed to prove that the items in the photo was a firearm, the court should reverse Taylor's conviction for unlawful possession of a firearm by a felon and unlawful possession of a firearm without a valid void card. Alternatively, this court should remand for a new trial to ensure that the jury is properly instructed and due to the inadmissible other crimes evidence. Thank you. Thank you, counsel. Ms. Wyckoff. Thank you, your honor. May it please the court and counsel. Your honors, today you've heard a very compelling argument about whether this could have been a BB gun, whether the firearm in the photos was a BB gun. Your honor, the problem with this argument is that this BB gun defense didn't happen at trial. This BB gun defense is coming up now for the first time on appeal. This case was really very simple. Did the defendant possess a firearm? The state had to prove two elements.  Two, he possessed a firearm. The state and defense counsel stipulated to the defendant's status as a felon, which really only left one element for the state to prove, that the defendant possessed a firearm. Defense counsel's strategy in this case was simply to let the state present their evidence, motion for a directed verdict, and argue to the jury that they did not prove that element beyond a reasonable doubt. They didn't bring in the firearm. They didn't prove 100% that it's a firearm. They didn't prove that it's a firearm. Defense counsel never once said, ladies and gentlemen of the jury, this could have been a BB gun. It could have been a pellet gun. It could have been an airsoft gun. That was not the defense at trial. This is coming up now for the first time on appeal. Your honors, the evidence that was admitted did establish the defendant's guilt beyond a reasonable doubt. There were three key pieces of evidence in this case. First, and most importantly, there were the photographs of the defendant holding what appears to be a firearm. Additionally, Detective Finnelli testified that in his experience as a police officer, he has never seen a BB gun or an airsoft gun with an extended magazine that is visible in the photographs. Lastly, the interrogation video was presented to the jury, in which the defendant said, I was just holding it, it being the gun. That in and of itself is the admission that Justice Harris was just asking defense counsel about a few minutes ago. Justice Harris asked, what would make this, what would prove that it was a firearm without the firearm being there? And there was some discussion that maybe an admission, maybe an admission would have helped. That's what we have here. In this video, Detective Finnelli asks the defendant, he says, is that the gun that was used in the shooting? The defendant says, no, it wasn't. And Detective Finnelli says, okay, well, you know, what's going on? Like, why do you even have this gun at all? You shouldn't have a gun. And he says, I was just holding it, it being the gun. Your Honors, this video needed to come in to set some background for what it means. What is it? It, just coming in alone, if only the video showed defendants saying, I was just holding it. It could be anything. I'm just holding it, this pen. I'm standing here with it, my documents. Without having some background of this video and the shooting incident, the jury would have no idea what I was just holding it means. In playing this 12-minute video, it was clear to the jury that I was just holding it means I was just holding a firearm. Your Honors, based on the photographs, the testimony of Detective Finnelli, a skilled police officer who interviewed the defendant for six hours, he has experience with firearms, and also based on the interrogation video whereby the defendant says, I was just holding it, it meaning the gun. That establishes the sufficiency of the evidence. Your Honor, defense counsel also suggests that the police interrogation interview was inadmissible as inadmissible propensity evidence. The state disagrees for two important reasons. Your Honors, first, the video evidence came in to show defendants' knowledge that he was holding a firearm. We can't set aside all notions of common sense, Your Honors, when defendant was in custody based on the shooting incident and the detective said, is that the gun that was used in the shooting? Any reasonable person would have said, Your Honor, that's not a gun. It's a BB gun, or it's an airsoft gun. Your Honors, this wasn't defendants' first rodeo with law enforcement. He is a convicted felon, which was stipulated to in this trial. He knew what was going on. He was very cooperative with law enforcement this whole time. If he was holding a BB gun, he certainly would have said so. By saying, I was just holding it, he not only admitted that he possessed a firearm, he also demonstrated his knowledge that what he was holding in the photos was a firearm. Second, Your Honor, when considering propensity evidence, we have to consider sort of the spectrum of bad acts evidence. While it's all considered in much the same way, there is some difference between really bad bad acts, for lack of a better term. For example, as Your Honors know, I'm fresh out of law school, and in Bar Prep 101, propensity evidence is anything that makes the event more or less likely to happen. For example, hypothetically speaking, let's say the defendant has committed armed robberies in the past. He's now on trial for armed robbery. The state wants to bring that in, and it might arguably show his propensity to commit armed robberies. Here the defendant is charged with being a felon in possession of a weapon, of a firearm specifically. How does this video show that he is more likely than not to be a felon in possession? Arguably, it shows that he's around people who have access to firearms. Maybe he runs with a bad crowd. He never admitted to his involvement in this shooting incident. Rather, he maintained throughout the whole 12-minute interview that came in that he had nothing to do with this shooting. He was there. He knows these people. If anything, this was more guilt by association, arguably, in terms of propensity evidence. So we have the armed robbery hypothetical on one end, and this guilt by association bad act on the other end of the bad act spectrum. This doesn't show his propensity to be a felon in possession of a weapon. Your Honors, the video was admitted to show that the defendant knew he was holding a firearm, and it was admitted to show that he admitted, I had a firearm. I was holding it. It being the gun. I haven't seen the video, so I don't know what this entire interrogation consisted of. But I know that there was more than just one photo depicting the defendant and what resembles the firearm. Is a portion of the interrogation inquiring why were so many photos taken, or what were the circumstances behind all of these photos? Who else is in these photos? Why are you shown with the firearm in your waistband or whatever? Right, Your Honor. The whole purpose, as Defense Counsel alluded to earlier, of this interrogation video was to investigate this October 14th shooting. There was a shooting incident at a party or a gathering. Defendant was a witness. He knew some of the people that were involved in this shooting, and he was brought in for questioning on that incident. Really, this felon in possession charge was not on Detective Fennelly's radar at all at the time that they're investigating this shooting. Detective Fennelly is more concerned about what happened on October 14th, trying to get to the bottom of that. Detective Fennelly asked the defendant, can we search your cell phone? And he says yes. He consents. He says, yes, you can search my cell phone. They extract these photographs from defendant's cell phone. Again, still thinking about this shooting, Detective Fennelly wants to figure out what happened with this shooting. And he asked the defendant, he says, we got these pictures off your phone. Is that the gun that was used in the shooting? He says, no, it's not. That's not the gun that was used in the shooting. He says, well, you shouldn't have a gun. He says, I'm just holding it. Detective Fennelly says, but you're not a hunter or anything. You don't have a FOID card. He says, no, I'm just holding it, it being the gun. It all relates back to whether it is the gun. And it's clear from this video that it indeed is the gun. This felon in possession charge came after this video recorded interview. Of course, as defense counsel suggests, it would have been great if Detective Fennelly said, what model of gun is that? What kind of gun? Where did you get it? Followed up with all those questions. But that just wasn't even what they were concerned about at that point in time. This shooting incident just occurred. They were trying to get to the bottom of it. Your Honor, counsel additionally argues that there should have been a BB gun instruction given to the jury, as I discussed in my opening statement. This BB gun defense was nonexistent in the trial. This was not the defense. Your Honors, I don't think the word BB gun ever once on the record comes out of defense counsel's mouth at all. Detective Fennelly did say during his testimony, he said, I'm not an expert in firearms, but in my opinion, in my experience as a law enforcement officer, I have never seen a BB gun with an extended magazine. On appeal, defense counsel has done a great job of creating this BB gun defense that didn't exist in the trial court. Rather, defense counsel attacked the sufficiency of the state's evidence by saying they didn't prove to you, ladies and gentlemen of the jury, that this was a firearm beyond a reasonable doubt. It would have been arguably unethical for defense counsel at trial to say this was a BB gun. There was no basis on the record for suggesting that the defendant had a BB gun in this case. Therefore, a BB gun instruction was not warranted in this case. It would have been improper had there been a BB gun instruction. Your Honors, arguably the only issue in this case is whether the court should have given jury instruction 3.14 to the jury. We're in this realm of plain error because there was no objection by defense counsel to the trial court's failure to give this instruction. Your Honors, there's multiple cases coming out of our own districts that suggest that counsel can make a strategic decision to not request the jury instruction. Counsel might not want to draw more attention to the other crime's evidence or the other bad act's evidence. And in this case, what kind of instruction was the court even going to give the jury? This video recorded evidence was admitted for the purpose of knowledge and to show that the defendant makes an admission in this case. The instruction given by the trial court would have drawn more attention to the other crime's evidence and would have just drawn a huge spotlight on the defendant's admission and on the defendant's knowledge that this was a firearm. Certainly, any competent defense counsel would not want that to happen at all. Just to give an example, the trial court would have had to say something along the lines of, ladies and gentlemen of the jury, you're about to view this video. You're only to consider it for the purpose of knowledge that the defendant was holding a firearm. Well, certainly, defense counsel would have a serious problem with that kind of an instruction being given. On the other hand, I guess the trial court could have said, you're only to consider this video recorded evidence to demonstrate that the defendant makes an admission in the video. Well, even more so, defense counsel would have had a problem with that kind of an instruction coming in. Your Honors, perhaps the only error in this case is that the trial court should have asked the defense counsel, should have asked defense counsel on the record, defense counsel, do you want me to give an instruction, at which point defense counsel likely would have said no. That didn't happen in this case, and perhaps that might be error. However, Your Honors, that is not reversible error. We consider it under the analysis of plain error, and we consider whether the defendant received a fair trial. It is clear on this record that the defendant did receive a fair trial. He arguably received a more fair trial because there was no instruction given that drew more attention to this video recorded interview. Didn't the trial judge in this case deny admission of the photographs to begin with, and the video? Your Honor, there were two hearings on the motion in limine. Defense counsel filed a motion in limine to keep the photos out, and also to keep out the video recorded interview of the defendant with Detective Finelli. There were a few photographs whereby the defendant was not the one holding the firearm. The court said no, those can't come in. They're not relevant. Defendant's not even holding the firearm. But the court did say the photographs which depicted the defendant actually holding the weapon, or the photo with the weapon in the defendant's waistband, those were deemed admissible by the trial court. In terms of the video, this recorded interview, I think, lasted from 2 p.m. until about 8 p.m. in the evening. It was over six hours long, this interrogation video. They ferreted it down to about 12 minutes of interview based on the relevant portions that had to do with the photographs, or almost chain of custody, if you like, where the photographs came from, showing the defendant give consent for them to search the cell phone and take the photographs. Your Honor, there was some back and forth between defense counsel, the state, and the trial court on which portions of the video would be admissible. There was an initial motion in limine hearing where the court actually said more things couldn't come in in the video. He said that the statement, I was just holding it, was actually inadmissible initially. That was in the first motion in limine hearing. The state then filed a motion to reconsider, and there was another hearing on a new day on the evidence whereby the court said, no, those statements are related to the photographs. When the defendant says, I was just holding it, it being the firearm, the court said that was relevant because it showed that the defendant made an admission. The court took very seriously its role in ferreting out this six hours worth of video recorded statements to 12 minutes to make sure that the defendant wasn't prejudiced by all of the other collateral information. The court, defense counsel, and the state all worked closely in two hearings to make sure that the only things that came in were related to the charge of the defendant being charged with a felon in possession of a firearm. Your Honors, because the evidence was properly admitted, which established the defendant's guilt beyond a reasonable doubt, the only potential issue in this case lies with whether the trial court erred in failing to ask defense counsel if he wanted a limiting instruction on other crimes evidence. Your Honors, while it is better practice for the trial court to ask defense counsel whether he wants the instruction or not, we consider this in the realm of plain error, and under plain error analysis, the defendant did receive a fair trial, and therefore there was not reversible error in this case. Your Honors, unless there are no other questions, we would ask that you affirm the defendant's conviction. Thank you. If there are no other questions, thank you, Ms. Whitecroft. Ms. Philpy? First of all, I'd like to discuss a couple of factual misstatements made by the state in her argument. First, she says twice at two different times that during the interrogation, Finnelli tells Taylor that he knows he shouldn't be holding a gun. And while he does say, you're a felon, you shouldn't be holding a gun, the state in her argument made it seem like that comment by Finnelli was immediately before the defendant's statement, I was just holding it. That's not true at all. That is not what happened. Finnelli asked the defendant, is this the gun used in the shooting? The defendant said no. Finnelli says, so then there's a whole bunch of guns that these guys got. The defendant says, yeah, I told you. Finnelli says, these guys, and I said you guys, because you also got your hands on it. The defendant says, oh, I mean, I was just holding it. So I wanted your honors to realize that Finnelli wasn't saying right at that moment, oh, you know you shouldn't be holding a gun, you're a felon, right? Secondly, the state argues that at no point does defense counsel say BB gun. This is patently inaccurate. During opening statements, defense counsel says, the dispute is whether or not Mr. Taylor was holding, as the state says, a handgun. In closing, defense counsel does say BB gun. First, defense counsel says, the issue here is whether the item that's in those photos is an actual firearm, and then says, Detective Finnelli is on the witness stand. He brings up a BB gun. Why would he do that?  That you can't tell what is in the photo. You can't tell if it's a firearm or if it's not. This is the central factual issue in this trial. This isn't a brand-new issue on appeal. In fact, the prosecutor in closing argument discusses this a lot, discusses Finnelli's testimony about BB gun, BB gun, BB gun. And Detective Finnelli didn't just say BB gun on direct examination. He said it on cross. He said it on redirect. He said it on recross. He said it on re-redirect and re-recross. This was not a brand-new issue on appeal. This was the issue in this case. So I also want to bring up that the state's plain argument is kind of a red herring in this case. She discusses it in terms of the jury instructions saying that this is plain error. The jury instructions were brought up in the context of ineffective assistance of defense counsel for not requesting other crimes, limiting instruction, and the exception in the firearm definition that BB guns aren't firearms. In their brief, the state doesn't say that this is plain error. Instead, the state addresses a whole new issue that wasn't brought up in the opening brief, saying that the trial court had the sua sponte duty to properly instruct the jury. Again, this was not an issue raised in Taylor's opening brief or reply brief. And that there is the particular issue that the state says is plain error. One final thing is that requiring the defendant to prove that it's a BB gun shifts the burden to the defendant to prove that he's innocent. And this is contrary to Illinois Supreme Court precedent in Lobsher and cases cited in Lobsher, like Soltis, that says that when there's an exception in the body of a statute, the state must prove the exception is not appropriate and may not leave to conjecture or assumption essential elements of the crime. For these reasons, we ask that this court vacate Taylor's convictions or alternatively remand for a new trial so that their jury can be properly instructed. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess.